IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re ) | |
| ) | |
| RICKY ALLEN HEINZE and ) | Case No. 10-20455 |
| ROXANNE MARIE HEINZE, ) | Chapter 7 |
| ) | |
| Debtors. ) | |

FILED

7:31 am, 1/12/11

Tim J. Ellis
Clerk of Court

## MEMORANDUM OPINION ON UNITED STATES TRUSTEE'S MOTION TO DISMISS

On November 3, 2010, this matter came before the Court for an evidentiary hearing on the United States Trustee's Motion to Dismiss Chapter 7 Case under 11 U.S.C. §707(b)(1), (2) and (3) and the Debtors' objection. The parties were represented as stated on the record. The Court having reviewed the record, testimony and evidence, finds that the motion should be granted.

**Jurisdiction**

The Court has jurisdiction under 28 U.S.C. §§ 1334 (a) and (b); 28 U.S.C. § 157(a) and (b)(1); and 28 U.S.C. §151. The motion was filed under 11 U.S.C. §§707(b)(1), (2) and (3).

**Facts:**

1. Ricky and Roxanne Heinze ("Debtors") filed for chapter 7 bankruptcy protection on April 26, 2010.

2. The Debtors are individuals with primarily consumer debts.

3. The Debtors scheduled the following debts: (1) secured debt in the total amount of $192,340.10; (2) Debtors do not schedule any unsecured priority debt; and (3) non-priority unsecured debt in the total amount of $111,634.67.

4. Debtors filed a Chapter 7 Statement of Current Monthly Income and Means Test Calculation ("Form 22A") on April 26, 2010, which was completely blank. On April 30, 2010, the Debtors filed the Amended Chapter 7 Statement of Current Monthly Income and Means Test Calculation ("Amended Form 22A"). On the Amended Form 22A, Debtors claimed a household size of two and asserted that the presumption of abuse did not arise. Subsequently, on July 27, 2010, Debtors filed a Second Amended Chapter 7 Statement of Current Monthly Income and Means Test Calculation ("Second Amended Form 22A") wherein, the Debtors claimed a household size of six. Debtors, again asserted that the presumption of abuse did not arise.

**Discussion**

The United State's Trustee ("UST") alleges that the Debtors' case should be dismissed as the presumption of abuse arises under § 707(b)(2), alleging that had Debtors properly calculated their Form 22A, they would have disposable income to pay into a plan. Alternatively, the UST alleges that under the totality of the circumstances, the Debtors' credibility is questionable allowing the Court to dismiss their case under §707(b)(3).

Section 707(b)(1)&(2) motion to dismiss

The court may dismiss a case filed by an individual whose debts are primarily consumer debts, if it finds that granting relief would be an abuse of the provisions of Chapter 7.[1] In considering whether the granting of relief would be an abuse, the court shall presume abuse exists if the debtor's current monthly income,[2] reduced by certain

---

[1] 11 U.S.C. §707(b)(1).

[2] Current monthly income is defined as the average monthly income from all sources that the debtor receives, derived during the 60-month period ending on the last day of the calendar month immediately preceding the

Page 2

monthly expenses[3]; multiplied by 60 is not less than the lesser of 25 percent of the debtor's nonpriority unsecured claims or $7,025.00 whichever is greater; or $11,725.00.[4]

The UST specifically challenges the Debtors' Form 22A on the following issues: (1) household size; (2) inconsistency on vehicle truck liability; (3) Mrs. Heinze's income; and, (4) energy costs. The Debtors allege that: (1) Mr. Heinze received a substantial bonus during the look-back period that skews the calculation of the Debtors' current monthly income; (2) the UST's office did not use the proper method of calculating federal income tax; and, (3) the Debtors' vehicle ownership expense issue must be addressed. Debtors presented a hypothetical Chapter 13 Form 22C for the purposes of showing the Court that the Debtors would not be able to fund a chapter 13 plan.[5]

a.  Household size

The purpose of the § 707(b)(2) means test is to ensure that debtors repay creditors the maximum that they can afford. To determine if debtors have sufficient disposable income to repay creditors, debtors' allowable expenses are deducted from current monthly income. Debtors apply standards based upon the household size to get deductions. The

---

date of the commencement of the case. 11 U.S.C. § 101(10A).

[3] These expenses include: applicable monthly expenses for the debtor, spouse and dependants; the actual monthly expenses for the debtor, spouse and dependants; reasonably necessary expenses incurred to maintain the safety of the debtor and the debtor's family from family violence; reasonably necessary expense for health insurance, disability insurance, and health savings account expenditures for the debtor, spouse and dependants; and, debtor's average monthly payments on secured debts and priority claims. 11 U.S.C. §§707(b)(2)(A)(i)(I) & (II).

[4] 11 U.S.C. § 707(b)(2)(A)(ii), (iii) & (iv).

[5] On the hypothetical Chapter 13 means test, the Debtors claimed a household size of six.

Bankruptcy Code limits the debtors' monthly expenses to those of the debtor, debtor's spouse and debtor's dependents. Larger households or those with more "dependents" subtract a greater amount of expenses from the current monthly income resulting in a lesser payment to unsecured creditors.[6] However, "dependent" is not defined in the Code.

There are generally two approaches to determine the Debtor's household size. The first is the "heads on beds" approach. This approach counts whomever is in the house.

The second approach is the "dependant" approach which requires a case-by-case determination by the court.[7] In the "dependant" approach, the debtor must have reasons to provide support for a dependant and the claimed dependant must have a reason to rely on the debtor. The Bankruptcy Court of Louisiana established the following factors for a court to consider, to determine if the dependant should be included in the household size: (1) the length of time the claimed dependant resided in the household; (2) the reason the claimed dependant resides in the household; (3) the age of the alleged dependant; (4) how much income or support the dependant receives from a third party; (5) whether the dependant is in school; and, (6) whether the dependant could be claimed as an IRS deduction or qualify in another legal way, i.e. for purposes of medical insurance.[8]

---

[6] 11 U.S.C. §707(b)(2)(A)(ii)(I).

[7] *In re Dunbar*, 99 B.R. 320 (Bankr. M.D. La. 1989).

[8] *Dunbar, supra.*

There is limited case law in the Tenth Circuit addressing this issue. The Bankruptcy Court in Kansas held that unless the additional people sharing the debtor's home fall within the limited class of people to whom additional expenses under 11 U.S.C. §707 (b)(2)(A)(ii)(I) apply, the Bankruptcy Code does not allow a debtor to include them in the expense calculation.

In the case before the Court, Debtors claim a household size of six on their Second Amended Form 22A. Mrs. Heinze testified that the Debtors' three adult children and a grandchild live with them. The adult children are characterized as: son, age 32; daughter, age 30; son, age 23; and a grandchild, age four and one-half.

The Debtors claimed two exemptions on their 2009 federal tax return. Mrs. Heinze testified that none of their adult children or the grandchild were claimed on the Debtors' 2009 tax return. This was a conscious decision by Mrs. Heinze and the particular adult child. Mrs. Heinze owns and operates a business that prepares tax returns. Through her analysis of the circumstances of each adult child, it was determined to be in the adult child's best interest that they each file an individual tax return in 2009.

Mrs. Heinze testified:

(1) Their daughter had unemployment benefits; several jobs and daycare expenses to consider. Her daughter benefitted by filing her own tax return so she could claim the earned income credit for herself and her child.

(2) One son owes back child support. Any refund that he was entitled to, was set off against his child support arrears.

(3) Their second son received unemployment but did not have taxes withheld, therefore he owed for the 2009 tax year.

    (4)    She is familiar with the Internal Revenue Service ("IRS") Code. It was her judgment that none of her children or grandchild are eligible to be a dependant for the Debtors under the IRS Code.

This Court finds the *Dunbar* Court's analysis persuasive. In this case, the children are all adult children or a dependant of one of the adult children, that have moved back into the parental home due to personal and financial issues. Mrs. Heinze, who is knowledgeable about the IRS dependant test, testified that none of the children met that test and historically were not claimed as dependants on the Debtors' 2009 tax return. The adult children were not attending school. At least two were employed and there was no testimony offered that any of them were unable to work. There was testimony that the adult children had fallen on hard personal times and moved back home with their parents. It is commendable that the Debtors, as parents, want to continue to support their adult children. However, the Debtors' creditors should not have to bear that burden. The adult children and grandchild do not meet the criteria to be considered dependants under the *Dunbar* factors. The Court finds that the correct household size in this case is two. As the Second Amended Form 22A was based on a household size of six, it is not relevant to the balance of the Court's analysis.

b.    <u>Vehicle expense</u>.

This Court has held and continues to hold that a debtor may not claim a vehicle ownership expense for a vehicle that is owned free and clear. There are expenses for older vehicles and maintenance that Debtors may deduct for the purpose of their means test calculation.

c.    <u>Utility expenses.</u>

Mrs. Heinze testified to the utility expenses. She testified that the Verison Wireless bills were attributed to cell phones that the Debtors "were going to use." However "for the last couple years," the Debtors' sons used those cell phones at a considerable expense. The charges related to their use was for the sons' emails, download movies or music. Mrs. Heinze also testified that she has had to pay overage charges because of her son's calls to his girlfriend in the amount of $300-350 a month. The Court finds that these are excessive and not even utility charges used by the Debtors and should be disallowed.[9]

d.    <u>Calculation of proper tax liability.</u>

The UST alleges that the Debtors are not using numbers that reflect their actual tax liability. The Debtors used their tax liability for 2009, while asserting that their income has decreased.

Peter Gullicks, Bankruptcy Analyst for the UST's office, testified that he used the total current monthly income numbers that the Debtors stated on their Form 22A(s). His calculations reflect that the Debtors' tax liability, based on the lower income is estimated to be $1,258.00 per month.

The Debtors testified that their income is reduced from last year. Mr. Heinze received a bonus in 2009 that he will not receive in 2010. Mrs. Heinze testified that, due to loss of business, the income from her business shall be reduced. The reduced current

---

[9] Although this issue was brought up, it does not appear that the Debtors claim additional utility costs on their Amended Form 22A.

monthly income reflected by the Debtors on Amended Form 22A should reasonably reflect the Debtors' reduced tax liability. The Court finds that the Debtors' tax liability to be $1,258.00 per month for purposes of the means test calculation.

**Conclusion**

The Court reviewed the Debtors' Amended Form 22A and the UST's analysis. The Court finds that the following adjustments to the Amended Form 22A are appropriate:

| Line | Debtors' Amended Form 22A | Adjustment |
| --- | --- | --- |
| 22A | $472.00 | $672.00 |
| 23 | $496.00 | $383.00 |
| 24 | $496.00 | $ 0 |
| 25 | $1,669.00 | $1,258.00 |
| 42 | $1,720.00 | $1,840.00 |

The Court's determination of the presumption of abuse on Debtors' Amended Form 22A is as follows:

> Line 48 - (Current monthly income) .............................. $7,950.56
> Line 49 - (Total of all deductions) ............................... $7,268.15
> Line 50 - Monthly disposable income ............................. $682.41
> Line 51 - 60-month disposable income ........................... $40,944.60

The Court finds that the Debtors listed non-priority unsecured debt in the total amount of $111,634.67.[10] As the amount of debtors' 60-month disposable income (40,944.60) is greater than the lesser of 25 percent of their nonpriority unsecured claims

---

[10] Debtors' Summary of Schedules.

of $27,908.67, or $11,725.00[11], which ever is less, the presumption of abuse has arisen.

The Court finds that based on a Debtors' household size of two, using their income calculations and adjusting the expense deductions on their Amended Form 22A as stated above, that the presumption of abuse arises. Therefore, the UST's motion to dismiss under 11 U.S.C. §707(b) (1) and (2) shall be granted. As the Court's ruling is dispositive of this case, it declines to rule on the UST's allegations that the Debtors' case should be dismissed under 11 U.S.C. §707(b)(1) and (3).

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021. The Debtors will be allowed a short time in which to convert to a Chapter 13 or 11.

DATED this __11__ day of January, 2011

By the Court

_____
HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

cc:   UST
      Stephen Winship

---

[11] The Court calculates that 25 percent of the debtor's nonpriority unsecured claims equals $27,908.75. That number is greater than the amount $7,205.00. Therefore, $11,725.00 is "less than the lessor" of the two numbers under 11 U.S.C. §707 (b)(2)(B)(iv).